T.C. Memo. 2012-252

UNITED STATES TAX COURT

LOREN LIPSON, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 2187-10L.                    Filed August 30, 2012.

        P filed a petition for judicial review pursuant to I.R.C. sec.
6330(d)(1)(A) in response to R's determination that levy action was
appropriate.

        <u>Held</u>:  R's determination is sustained.


<u>Cruz Saavedra</u>, for petitioner.

<u>Aely K. Ullrich</u>, for respondent.

[*2]                     MEMORANDUM OPINION

WHERRY, <u>Judge</u>:  This case is before the Court on a petition for review of a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 (notice of determination).[1]  Petitioner seeks review of respondent's determination to proceed with a proposed levy with respect to his 2006 tax year. The sole issue is whether respondent's determination to proceed with the proposed levy to collect petitioner's unpaid tax liabilities constitutes an abuse of discretion.

<u>Background</u>

This case was submitted fully stipulated pursuant to Rule 122.  The parties' stipulation of facts, with accompanying exhibits, is incorporated herein by this reference.  Petitioner resided in California when he filed his petition.

Petitioner filed his 2006 Form 1040, U.S. Individual Income Tax Return, on April 15, 2007, but failed to fully pay the liability reported on the Form 1040. Petitioner's 2006 underlying tax liability is not in dispute.

On March 16, 2009, respondent issued to petitioner a Final Notice of Intent to Levy and Notice of Your Right to a Hearing, showing a total amount due of

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1986, as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[**\*3**] $149,378.10, for the 2006 tax year. Petitioner timely filed Form 12153, Request for a Collection Due Process or Equivalent Hearing, on which he checked the box next to "installment agreement". In documents attached to the Form 12153 petitioner stated that a levy "would cause a severe hardship on the taxpayer by not allowing payment of necessary living expenses. The taxpayer does not have assets to liquidate for payment of the liabilities nor do they [sic] have the ability to borrow funds for payment."

By letters dated October 27, 2009, Settlement Officer Sharon R. Lavenberg notified petitioner that she had been assigned his case and scheduled a telephone conference with his counsel, Cruz Saavedra, for November 30, 2009. Settlement Officer Lavenberg's letter to Mr. Saavedra also requested that petitioner submit Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, and informed petitioner that

> For me to consider alternative collection methods such as an installment agreement or offer in compromise, you must provide any items listed below. In addition, you must have filed all federal tax returns required to be filed.

> Appeals cannot approve an installment agreement or accept an offer-in-compromise unless all required estimated tax payments for the current year's income tax liability have been made. If you wish to pursue one of these alternatives during the CDP hearing process, you must arrange for the payment of any required estimated tax payments. Delinquent estimated tax payments can be included in an installment

**[*4]** agreement.  However, the estimated tax payments must be paid in full before an offer-in-compromise can be accepted.  Our records indicate that you have not made estimated tax payments for the following period(s):  12/2009.

In preparation for the November 30, 2009, collection due process (CDP) telephone hearing Mr. Saavedra sent Settlement Officer Lavenberg a facsimile dated November 30, 2009, in which he proposed that petitioner be placed on an installment agreement of $10,000 per month, beginning January 1, 2010.  Mr. Saavedra proposed that the installment agreement also include approximately $80,000 of unpaid tax liabilities that would accrue when petitioner filed his 2009 Federal income tax return.  Mr. Saavedra stated that petitioner had not been able to make timely estimated tax payments for 2009 "due to prior payments being made to the IRS, uneven amounts of earned income (hard to plan) and payments required to be made to his wife pending dissolution of their marriage."  Attached to the fax was an updated Form 433-A for petitioner which inter alia showed total monthly income of $18,194, total monthly expenses of $22,000, and investments of $406,805.  Petitioner's listed expenses include voluntary monthly payments of $10,000 to his wife.

The CDP hearing was held via telephone on November 30, 2009.  As of the date of the CDP hearing, petitioner had still not made any estimated income tax

[*5] payments for the 2009 tax year. During the CDP hearing Settlement Officer Lavenberg explained that she would not accept the installment agreement because petitioner had already defaulted on two installment agreements, was not in compliance with current tax payments, and was not showing an ability to make the proposed installment agreement payments.[2] During the CDP hearing Mr. Saavedra acknowledged that petitioner's only chance was to sell his house. Petitioner's house is worth several million dollars, and he has sufficient equity in the house to pay the taxes at issue; but according to petitioner the disposition of the house was restricted by the court which had jurisdiction over the divorce, pending the final division of the marital property.

Respondent issued a notice of determination dated December 16, 2009, sustaining the proposed levy action. In the background portion of the notice of determination, it is explained that petitioner's Form 433-A showed expenses exceeding his income, that he had already defaulted on two installment agreements, and that he had showed no ability to make the installment payments. The notice of determination noted that petitioner had "requested [an] installment agreement but * * * does not qualify [for any collection alternatives] because he is

---

[2]Respondent alleges petitioner defaulted on two prior installment agreements. On brief petitioner for the first time disputes whether he defaulted on one of the installment agreements, although he admits he defaulted on the other.

[*6] not in compliance with his estimated tax payments for 12/2009." Petitioner timely petitioned this Court, stating in part: "Petitioner disagrees with the decision of the Appeals Office to deny his request for an Installment Agreement on the grounds that he was not in compliance with estimated tax payments."

Discussion

Section 6331(a) authorizes the Commissioner to levy upon property or property rights of a taxpayer liable for taxes who fails to pay those taxes within 10 days after a notice and demand for payment is made. Section 6331(d) provides that the levy authorized in section 6331(a) may be made with respect to unpaid tax liability only if the Commissioner has given written notice to the taxpayer 30 days before the levy. Section 6330(a) requires the Commissioner to send a written notice to the taxpayer of the amount of the unpaid tax and of the taxpayer's right to a section 6330 hearing at least 30 days before the first levy is made.

If an administrative hearing is requested in a levy case, the hearing is to be conducted by Appeals. Sec. 6330(b)(1). At the hearing, the Appeals officer conducting it must verify that the requirements of any applicable law or administrative procedure have been met. Sec. 6330(c)(1).

A taxpayer may raise any relevant issue relating to the unpaid tax or the proposed levy, including a spousal defense, appropriateness of the collection

**[*7]** action, and/or collection alternatives such as an offer-in-compromise or an installment agreement. Sec. 6330(c)(2); sec. 301.6330-1(e)(1), Proced. & Admin. Regs. Following the hearing, the Appeals officer must determine among other things whether the proposed collection action should proceed. In making the determination the Appeals officer shall take into consideration: (1) whether the requirements of all applicable law and administrative procedure have been satisfied; (2) any relevant issues raised by the taxpayer during the section 6330 hearing; and (3) whether the proposed collection action balances the need for efficient collection of taxes with the taxpayer's legitimate concern that any collection action be no more intrusive than necessary. Sec. 6330(c)(3).

This Court has jurisdiction to review the Appeals officer's determination. Sec. 6330(d)(1). As is the case here, where the taxpayer's underlying liability was not properly at issue in the hearing, we review the determination for abuse of discretion. Sego v. Commissioner, 114 T.C. 604, 610 (2000); Goza v. Commissioner, 114 T.C. 176, 181-182 (2000). An Appeals officer's determination is not an abuse of discretion unless the determination is arbitrary, capricious, or without sound basis in law or fact. Giamelli v. Commissioner, 129 T.C. 107, 111 (2007). The Court of Appeals for the Ninth Circuit, the court to which this case is appealable absent stipulation of the parties to the contrary, has

**[\*8]** held that the Court's review is confined to the record at the time the Commissioner's decision was rendered. Keller v. Commissioner, 568 F.3d 710, 718 (9th Cir. 2009), aff'g in part as to this issue T.C. Memo. 2006-166.

Petitioner argues that Settlement Officer Lavenberg abused her discretion in denying his installment agreement. Among the issues that may be raised at Appeals and are reviewed for an abuse of discretion are "offers of collection alternatives" such as an installment agreement. Sec. 6330(c)(2)(A)(iii); see Salahuddin v. Commissioner, T.C. Memo. 2012-141.

Petitioner asserts that "respondent's determination that petitioner's lack of current compliance barred him from any alternative to the intended levy is wrong as a matter of law and results in an abuse of discretion." Internal Revenue Manual (IRM) pt. 5.14.1.2(8)(F) (Sept. 26, 2008) states that "current returns for taxes must be filed and current deposits paid to qualify for an agreement" but goes on to state in a subsequent provision that "If it appears a taxpayer will have a balance due at the end of the current year, the accrued liability may be included in an agreement." Id. pt. 5.14.1.4.1(19). Petitioner states that "The Appeals Office had discretion to approve petitioner's proposed installment agreement." This is true. However, that does not mean Settlement Officer Lavenberg had to accept petitioner's proposed installment agreement.

**[*9]** Settlement Officer Lavenberg did rely, in part, on petitioner's failure to pay current taxes in rejecting his proposed installment agreement. However, this reliance does not constitute an abuse of discretion. See Orum v. Commissioner, 123 T.C. 1, 13 (2004), aff'd, 412 F.3d 819 (7th Cir. 2005). Additionally, Settlement Officer Lavenberg also analyzed and relied on petitioner's submitted Form 433-A, which she determined did not reflect an ability of petitioner to pay the proposed installment payments of $10,000 per month. See IRM pt. 5.14.1.4(4) (Sept. 26, 2008) (stating "Installment agreements must reflect taxpayers' ability to pay on a monthly basis throughout the duration of agreements."). She also looked at the fact that petitioner owned investments totaling $406,805. Id. pt. 5.14.1.4(6) states that "Taxpayers do not [generally] qualify for [an] installment agreement[ ] if balance due accounts can be fully or partially satisfied by liquidating assets".

The Court does not normally make an independent determination of what would be an acceptable alternative. Murphy v. Commissioner, 125 T.C. 301, 320 (2005), aff'd, 469 F.3d 27 (1st Cir. 2006). If Appeals or settlement officers follow all statutory and administrative guidelines and provide a reasoned balanced decision, the Court will not reweigh the equities. Fifty Below Sales & Mktg., Inc. v. United States, 497 F.3d 828, 830 (8th Cir. 2007). We do not conclude that Settlement Officer Lavenberg abused her discretion in denying petitioner's

**[\*10]** proposed installment agreement considering that he had defaulted on prior installment agreements,[3] he had sufficient assets to pay the liabilities, and his listed expenses on Form 433-A exceeded his income.[4]

Petitioner also argues that "a levy on petitioner's wages and other earnings would render petitioner unable to pay his basic living expenses" and that Settlement Officer Lavenberg abused her discretion by failing to take this into consideration. Petitioner argues Settlement Officer Lavenberg should have considered section 301.6343-1(b), Proced. & Admin. Regs. which provides:

> (b)  Conditions requiring release.--The director must release the levy upon all or a part of the property or rights to property levied

---

[3]Petitioner did not raise until trial the issue of whether he had defaulted on two installment agreements as opposed to one.  Our review is confined to the record at the time the Commissioner's decision was rendered.  See Keller v. Commissioner, 568 F.3d 710, 718 (9th Cir. 2009), aff'g in part as to this issue T.C. Memo. 2006-166.

[4]In denying his proposed installment agreement, petitioner argues that Settlement Officer Lavenberg did not analyze national and local standards or Internal Revenue Manual pt. 5.15.1.23 (May 9, 2008) (Retirement or Profit Sharing Plans).  IRM pt. 5.15.1.7(5) (May 9, 2008) states "National and local expense standards are guidelines".  IRM pt. 5.15.1.23 provides that when determining the value of a pension plan, if the plan is a 401(k) plan and the taxpayer is close to retirement, then "equity is the cash value less any expense for liquidating the account and early withdrawal penalty, or consider the plan as income, if the income from the plan is necessary to provide for necessary living expenses."  In the CDP hearing neither petitioner nor Mr. Saavedra raised the national and local expense standards or that petitioner's retirement plan should be discounted or considered future income.

**[\*11]** upon if he or she determines that one of the following conditions exists--

\* \* \* \* \* \* \*

(4) Economic hardship--(i) General rule.--The levy is creating an economic hardship due to the financial condition of an individual taxpayer. This condition applies if satisfaction of the levy in whole or in part will cause an individual taxpayer to be unable to pay his or her reasonable basic living expenses. The determination of a reasonable amount for basic living expenses will be made by the director and will vary according to the unique circumstances of the individual taxpayer. Unique circumstances, however, do not include the maintenance of an affluent or luxurious standard of living.

On his Form 12153 petitioner stated that a levy on his "income and/or bank accounts would cause a severe hardship \* \* \*. The taxpayer does not have assets to liquidate for payment of the liabilities". Respondent's brief asserts, and the settlement officer's notes support, that petitioner did not again mention until he filed his petition that a levy would result in his being unable to pay necessary living expenses.

In the fax sent to Settlement Officer Lavenberg by Mr. Saavedra in preparation for the November 30, 2009, CDP hearing, there is no mention of how a levy would cause petitioner to be unable to pay necessary living expenses, although the letter did state:

Taxpayer has been in the process of getting a divorce for several years and has been required to make payments to his spouse during

[*12] this time which has caused great disruption in the handling of his own finances. Taxpayer is requesting that the dissolution court order the sale of the family residence so that these and other obligations can be paid from the proceeds. The wife, who resides there, is resisting such action.

Respondent contends, and we agree, that petitioner's statement that he was experiencing a disruption in his finances as a result of the divorce proceedings does not equate to his being unable to pay for basic necessities. See Fargo v. Commissioner, 447 F.3d 706, 709-710 (9th Cir. 2006), aff'g T.C. Memo. 2004-13. The letter contains no other explanation as to how a levy on his investments, house, or income would prevent him from paying living expenses. In his reply brief petitioner argues that he "did submit evidence that a levy would cause economic hardship." The evidence alluded to is petitioner's updated Form 433-A, which was attached to the fax.

As explained above, the Form 433-A showed petitioner had investments totaling over $400,000. It showed monthly income of $18,194. Petitioner had stated he could get additional work, earning an additional $10,000 per month. Included in the expenses listed were the monthly payments of $10,000 petitioner was voluntarily making to his spouse. Petitioner did not explain how levying against his investments or home would leave him unable to pay necessary living

[*13] expenses.  Petitioner acknowledges that his earnings, coupled with the voluntary payments to his wife, "do not suggest economic hardship."

Settlement Officer Lavenberg did not abuse her discretion.  She made sure all applicable law and administrative procedure had been satisfied, she considered the issues petitioner raised during the CDP hearing, and, on the evidence before her, she concluded that the proposed collection action was not more intrusive than necessary.  Settlement Officer Lavenberg's rejection of petitioner's proposed installment agreement and the determination to proceed with collection for his 2006 tax year was not an abuse of discretion; therefore, the proposed collection action is sustained.

The Court has considered all of petitioner's contentions, arguments, requests, and statements.  To the extent not discussed herein, the Court concludes that they are meritless, moot, or irrelevant.

To reflect the foregoing,

Decision will be entered

for respondent.