T.C. Memo. 2015-156

UNITED STATES TAX COURT

MICHAEL E. LUNNON, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 13245-12L.                     Filed August 12, 2015.

Michael E. Lunnon, pro se.

<u>Luke D. Ortner</u>, for respondent.

MEMORANDUM OPINION

MARVEL, <u>Judge</u>:  Pursuant to section 6330(d)[1] petitioner seeks review of

respondent's (hereinafter IRS or respondent) determination to sustain collection

_____

[1]Unless otherwise indicated, all section references are to the Internal
Revenue Code as amended and in effect at all relevant times, and all Rule
references are to the Tax Court Rules of Practice and Procedure.

[*2] actions by levy and the filing of a notice of Federal tax lien (NFTL) relating to petitioner's unpaid Federal employment taxes, i.e., unpaid withholding and Federal Insurance Contributions Act (FICA) tax liabilities with respect to his Forms 941, Employer's Quarterly Federal Tax Return, for all four quarters of each of the years 2005-08, and the first quarter of 2009, and unpaid Federal Unemployment Tax Act (FUTA) tax liabilities with respect to his Forms 940, Employer's Annual Federal Unemployment (FUTA) Tax Return, for the years 2005-2009[2] (collectively, periods at issue).[3]

The issues for decision are whether petitioner may challenge his underlying liabilities (and if so, the correct amount of the underlying liabilities) and whether the IRS abused its discretion in sustaining the proposed collection actions. We hold that petitioner may not challenge the underlying liabilities, and we sustain the IRS' determination.

---

[2]Petitioner's Form 940 liability with respect to taxable year 2009 is prorated because during 2009 he formed a single-member limited liability company (LLC) and contributed his business to the LLC. Employment tax liabilities for periods after the formation of the LLC are the subject of the cases LG Kendrick, LLC v. Commissioner, T.C. Dkt. No. 10241-12L (filed Apr. 24, 2012), and LG Kendrick, LLC v. Commissioner, T.C. Dkt. No. 900-14L (filed Jan. 15, 2014). See sec. 301.7701-2(c)(2)(iv)(B), Proced. & Admin. Regs.

[3]For the remainder of this report we use the term "employment tax" to refer to tax under FICA, secs. 3101-3128, FUTA, secs. 3301-3311, and income tax withholding, secs. 3401-3406 and 3509.

[*3]                                    Background

The parties submitted this case fully stipulated under Rule 122.  The

stipulated facts and facts drawn from stipulated exhibits are incorporated herein by

this reference.[4]  Petitioner resided in New Mexico when he filed the petition.

From 1995 until 2009 petitioner operated a franchise business, Mail Boxes

Etc., later called The UPS Store, as a sole proprietorship.  Beginning in 2009

petitioner formed LG Kendrick, LLC (LG Kendrick), a single-member LLC that

petitioner used to own and operate his business.

Petitioner reported wages and paid employment tax with respect to

employees of the franchise to the State of New Mexico until 2002.  He also filed

Forms 941 with the IRS for the December 31, 2001, quarter through the March 31,

2003, quarter.  During the periods at issue petitioner paid an average of five

individuals approximately twice per month.[5]  He also has maintained a workers'

---

[4]Petitioner objected to Exhibit 3-J, respondent's request for admissions, because it was not part of the administrative record.  When this case was recalled at the June 2, 2014, Albuquerque, New Mexico, trial session, we reserved ruling on petitioner's objection and stated that the exhibit's admissibility would be decided on the basis of whether the exhibit was incorporated into the administrative record on remand.  The exhibit is not part of the administrative record on remand, and we therefore sustain petitioner's objection.  We decide this case without regard to deemed admissions under Rule 90(c).

[5]Petitioner did not stipulate that he paid employees for the periods at issue.

[*4] compensation and employer's liability insurance policy since at least 2003. A 2006 insurance policy application that petitioner submitted for his business shows an estimated annual payroll of $75,000. The policy was renewed every year until at least 2011. However, petitioner did not file Forms 941 or Forms 940 or pay any employment tax for the periods at issue.

After the IRS had subpoenaed and reviewed the bank records associated with petitioner's business and placed a field call to the business, the IRS concluded that petitioner had paid employees approximately $7,440 per month[6] and therefore had employment tax liabilities for the periods at issue. Although the IRS requested that petitioner file employment tax returns for the delinquent periods, petitioner refused, and Revenue Officer T.W. Lyons prepared a substitute for return under section 6020(b) for each period at issue.

The revenue officer sent a Letter 1085(DO), dated March 31, 2011, by certified mail to petitioner at his business address. One of the individuals who the IRS had determined was an employee, Cameron Curley, signed the certified mail receipt on April 4, 2011. The letter informed petitioner about the substitutes for returns and stated that petitioner had 30 days to prepare and mail employment tax

---

[6]This figure does not include petitioner's wages from working at the business.

[*5] returns, mail additional information petitioner wanted the IRS to consider, or request a conference with Revenue Officer Lyons. The revenue officer stated that the IRS would process the substitutes for returns and assess the tax reflected on the returns "plus any additional penalties and interest" if petitioner did not respond within 30 days. The letter explained that petitioner could request a meeting or a telephone conference with the revenue officer's supervisor if petitioner did not agree "with any or all of the IRS findings given you". If petitioner still did not agree with the findings after a conference with the supervisor, he would have the opportunity to "appeal * * * [his] case to the Area Director of General Appeals."

Petitioner did not respond to the Letter 1085(DO) within 30 days. The IRS processed the substitutes for returns and assessed the tax. Petitioner subsequently mailed Revenue Officer Lyons a letter dated June 17, 2011, that referred to a face-to-face meeting wherein Revenue Officer Lyons apparently attempted to collect the assessed tax and gave petitioner an IRS publication entitled "The Truth About Frivolous Tax Arguments". Petitioner's letter did not offer any useful or relevant information about the employment tax liabilities[7] but rather stated that the IRS' requests for payment were illegal and referred to Revenue Officer Lyons as "the

---

[7]The letter also appears to reference levies that respondent had been using to collect tax liabilities that are not before the Court.

[*6] spawn of Satan himself". Petitioner also enclosed a document published by "Truth Attack" entitled "The Real Truth About the IRS's 'Truth' About 'Frivolous' Tax Arguments". The document, of approximately 30 pages, contained a variety of frivolous arguments. Revenue Officer Lyons forwarded the letter to the U.S. Treasury Inspector General for Tax Administration for review.

On August 2, 2011, the IRS mailed to petitioner a Letter 1058, Final Notice of Intent to Levy and Notice of Your Right to a Hearing (levy notice), with respect to the periods at issue. In the levy notice respondent proposed for the first time additions to tax under section 6651(a)(3) for late payment. The IRS also mailed to petitioner two Letters 3172(DO), NFTL Filing and Your Right to a Hearing Under IRC 6320, dated August 11, 2011, with respect to the periods at issue.[8] In response to these notices petitioner timely filed a Form 12153, Request for a Collection Due Process or Equivalent Hearing. The hearing request disputed the proposed levy and the NFTL, requested withdrawal of the lien, and stated: "I do not understand any basis for the claims made in the FINAL NOTICE, and do not believe I owe them." Petitioner subsequently filed a Freedom of Information Act

_____

[8]The Letters 3172(DO) were first mailed to petitioner at an outdated address but were later mailed to the correct address.

[*7] (FOIA) request for respondent's documents, including "any documents indicating I had any employees, or was otherwise subject to filing 940 or 941 forms."[9]

Petitioner's case was transferred to Settlement Officer Jeffrey Silverhorn in the IRS Appeals Office. By letter dated October 27, 2011, Settlement Officer Silverhorn requested financial information, asked petitioner to file his delinquent returns, scheduled a telephone conference call with petitioner for December 8, 2011, and warned petitioner that he could not continue to assert frivolous positions. Before the conference call petitioner sent Settlement Officer Silverhorn a letter requesting proof that petitioner paid employees and requesting documentation of petitioner's own frivolous positions. Petitioner did not give Settlement Officer Silverhorn any of the requested financial information and did not file the requested Forms 940 and 941. During the conference call petitioner wanted to discuss only constitutional challenges to his tax liabilities and how he disagreed with Revenue Officer Lyons' "intrusive" investigation.

---

[9]An IRS disclosure manager sent petitioner a letter, dated November 14, 2011, regarding his FOIA request. The letter stated that the IRS was unable to send the requested information within the 20-day statutory period and extended the statutory response date to December 1, 2011. According to the letter, if the IRS had not responded by that time, petitioner would be able to file suit to enforce the FOIA request. As of March 26, 2012, the IRS had not responded to petitioner's FOIA request.

**[\*8]**   Settlement Officer Silverhorn concluded that (1) petitioner had a prior opportunity to contest the underlying liabilities because he had received a Letter 1085(DO), (2) petitioner did not properly challenge the underlying liabilities in any event because his positions "have no merit and are groundless", and (3) petitioner did not qualify for any collection alternative or lien withdrawal.  The IRS Appeals Office therefore issued a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 (notice of determination) dated April 30, 2012, sustaining the proposed levy and NFTL for the employment tax liabilities.[10]  The notice of determination stated that petitioner was liable for employment taxes on the basis of "wage information obtained from the State of New Mexico" and that he was not entitled to challenge the underlying liabilities. However, the notice of determination did not address the section 6651(a)(3) additions to tax.

Petitioner timely filed a petition in this Court disputing the IRS' determination.  In preparation for trial the IRS subpoenaed additional bank records and documents related to the workers' compensation insurance policy.  The IRS

---

[10]The first page of the notice of determination identified the underlying liabilities as income taxes, but the third page of the notice made clear that the notice of determination sustained the employment taxes due for the periods at issue.

[*9] subsequently filed a motion to remand petitioner's case to the Appeals Office because, during the section 6320/6330 hearing, the settlement officer did not give petitioner the documentary evidence that formed the basis of the underlying assessments and did not determine whether petitioner actually received the Letter 1085(DO) because Cameron Curley, not petitioner, signed the certified mail receipt. We granted the IRS' motion.

On remand the case was transferred to Settlement Officer Joann Mares. The supplemental section 6320/6330 hearing was conducted through correspondence at petitioner's request. Settlement Officer Mares mailed petitioner the documents on which the IRS relied to calculate and assess the underlying liabilities and documents supporting the assessments that respondent had obtained during the pendency of the Tax Court case, including copies of checks that petitioner wrote biweekly to the same individuals, employment tax transcripts from the State of New Mexico, workers' compensation insurance policy documents, IRS transcripts, and internal IRS documents summarizing petitioner's bank records. Settlement Officer Mares sent petitioner a letter dated September 10, 2013, asking petitioner to explain his relationship with Cameron Curley and whether petitioner recalled receiving the Letter 1085(DO). The letter also requested that petitioner file the delinquent Forms 941 and 940 for the periods at issue by September 24, 2013,

**[*10]** either using the documents respondent had provided to him or any additional information petitioner had.  The letter stated that Settlement Officer Mares would send the returns to the IRS Service Center for processing if petitioner completed them by the deadline.  The letter also warned petitioner that, if he did not respond to the letter, Settlement Officer Mares would make a supplemental determination on the basis of information already in the record.[11]

Instead of supplying the requested information petitioner sent a letter to Settlement Officer Mares challenging the documents that respondent provided because at least some of them were not available when the IRS made its original

---

[11]Settlement Officer Mares also mailed a letter dated August 22, 2013, to petitioner's business address.  The recipient of the letter is "LG Kendrick LLC DBA Mail Boxes Etc No 2575"; however, the salutation reads:  "Dear Mr. Lunnon".  The letter referenced taxable periods in 2011 and 2012 but stated:  "I wasn't sure if you understood [upon the receipt of Letter 1085(DO)] that you could have prepared and signed tax returns that you believe are correct and return them to the IRS within 30 days.  If you have the correct returns you may submit these to me on or before August 31, 2013 so that the Internal Revenue Service can process them."

After petitioner notified Settlement Officer Mares that her August 22, 2013, letter referenced taxable periods not connected with the remanded section 6320/6330 hearing, Settlement Officer Mares sent petitioner another letter dated September 6, 2013.  Although the September 6, 2013, letter also referred to both LG Kendrick and Mr. Lunnon, the taxable periods referenced in the letter are those for which LG Kendrick and not Mr. Lunnon owes outstanding employment taxes.  Both the August 22 and September 6, 2013, letters therefore appear to address LG Kendrick's, not petitioner's, employment tax liabilities.

[*11] determination and because the IRS did not provide petitioner with the tax identification numbers and personal tax returns of his employees. Settlement Officer Mares issued a Supplemental Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 (supplemental notice of determination) on the basis of the information in the administrative record. Settlement Officer Mares determined that petitioner had a prior opportunity to contest the underlying liabilities and that even if Settlement Officer Mares were able to consider it, petitioner had failed to submit evidence adequately contesting the underlying liabilities after a reasonable opportunity to do so. As petitioner did not request a collection alternative or provide any relevant information with respect to his lien withdrawal request, Settlement Officer Mares determined to sustain the proposed collection actions.

## Discussion

I.    Section 6320/6330 Hearing

Section 6321 imposes a lien on all property and property rights of a taxpayer liable for taxes where a demand for the payment of the taxes has been made and the taxpayer fails to pay. The IRS is authorized to file an NFTL with respect to a taxpayer who has an outstanding tax liability and fails to pay after

[*12] notice and demand.  Sec. 6323.  Section 6320(a) requires the Secretary[12] to send written notice to the taxpayer of the filing of an NFTL and of the taxpayer's right to an administrative hearing on the matter.  The conduct and scope of section 6320 hearings are governed by section 6330(c), (d) (other than paragraph (2)(B)), (e), and (g).  Sec. 6320(c).

The Secretary is authorized to collect tax by levy upon a taxpayer's property if any taxpayer liable to pay any tax neglects or refuses to pay such tax within 10 days after notice and demand for payment.  Sec. 6331(a).  Section 6330(a) requires the Secretary to send written notice to the taxpayer of the taxpayer's right to request a section 6330 hearing before a levy is made.  If the taxpayer makes a timely request for a hearing, the IRS Appeals Office conducts the hearing.  Sec. 6330(b).

At a section 6320 or 6330 hearing a taxpayer may raise any relevant issue, including appropriate spousal defenses, challenges to the appropriateness of the collection action, and collection alternatives, such as an offer-in-compromise or an installment agreement.  Sec. 6330(c)(2)(A).  Additionally, the taxpayer may contest the validity of the underlying tax liability, but only if the taxpayer did not

---

[12]The term "Secretary" means the Secretary of the Treasury or his delegate. Sec. 7701(a)(11)(B).

**[\*13]** otherwise have an opportunity to dispute the tax liability. Sec.

6330(c)(2)(B); Sego v. Commissioner, 114 T.C. 604, 609 (2000).

Following a hearing, the Appeals Office must issue a notice of

determination regarding the appropriateness of the proposed collection action.

The Appeals Office is required to take into consideration: (1) verification

presented by the Secretary that the requirements of applicable law and

administrative procedure have been met, (2) relevant issues that the taxpayer

raised, and (3) whether the proposed collection action appropriately balances the

need for efficient collection of taxes with the taxpayer's concerns regarding the

intrusiveness of the proposed collection action. Sec. 6330(c)(3); Wadleigh v.

Commissioner, 134 T.C. 280, 287-288 (2010).

Pursuant to sections 6320(c) and 6330(d)(1), we have jurisdiction to review

the Appeals Office's determination. See Murphy v. Commissioner, 125 T.C. 301,

308 (2005), aff'd, 469 F.3d 27 (1st Cir. 2006). Where the validity of the

underlying tax liability is properly at issue, we review the determination regarding

the underlying tax liability de novo. Sego v. Commissioner, 114 T.C. at 610;

Goza v. Commissioner, 114 T.C. 176, 181-182 (2000). Where the validity of the

underlying tax liability is not properly at issue, we review the Appeals Office's

determination for abuse of discretion. Sego v. Commissioner, 114 T.C. at 610;

[*14] Goza v. Commissioner, 114 T.C. at 182. In reviewing for abuse of discretion, we must uphold the Appeals Office's determination unless it is arbitrary, capricious, or without sound basis in fact or law. See, e.g., Murphy v. Commissioner, 125 T.C. at 320; Taylor v. Commissioner, T.C. Memo. 2009-27, 97 T.C.M. (CCH) 1109, 1116 (2009).

## II.     The Underlying Liabilities

Petitioner has continuously maintained that he does not owe the underlying employment tax liabilities because (1) the IRS has the burden of proving that petitioner paid employees for the periods at issue, and (2) the IRS did not meet this burden because it may not rely on documentary evidence obtained after the issuance of the notice of determination to sustain the assessed taxes. Respondent contends that petitioner may not challenge the underlying liabilities because the opportunity to dispute the liabilities that the Letter 1085(DO) offered constituted a prior opportunity to dispute the liabilities and because petitioner did not properly raise the issue with the Appeals Office. Because we find that petitioner did not properly raise the underlying liabilities with the Appeals Office, we do not address whether the Letter 1085(DO) provided petitioner with a prior opportunity to challenge the liabilities. See Caudle v. Commissioner, T.C. Memo. 2014-196, at *6-*7 n.2, aff'd, 603 Fed. Appx. 220 (4th Cir. 2015).

[*15] In reviewing a determination under section 6330(c)(2), including challenges to the underlying liability, we consider only issues that the taxpayer properly raised during the section 6320/6330 hearing. Secs. 301.6320-1(f)(2), Q&A-F3, 301.6330-1(f)(2), Q&A-F3, Proced. & Admin. Regs.; see Giamelli v. Commissioner, 129 T.C. 107, 115 (2007). The taxpayer does not properly raise an issue, including the underlying liability, during the hearing if he "fails to present to Appeals any evidence with respect to that issue after being given a reasonable opportunity to present such evidence." Secs. 301.6320-1(f)(2), Q&A-F3, 301.6330-1(f)(2), Q&A-F3, Proced. & Admin. Regs.; see Pough v. Commissioner, 135 T.C. 344, 349 (2010).

On remand petitioner had the opportunity to file his delinquent tax returns or present any other information that he wanted Settlement Officer Mares to consider with respect to the employment tax liabilities. In the letter dated September 10, 2013, Settlement Officer Mares allowed petitioner two weeks to submit the returns for processing. She told petitioner that he could use the documents that respondent had provided or any additional information he had to prepare the returns. Instead of filing returns or producing any relevant information petitioner continued to assert that he was not liable for the underlying liabilities because respondent could not prove the existence of any employees.

**[\*16]** Petitioner, rejecting the documentary evidence that respondent obtained during the trial as untimely and therefore irrelevant, quotes Gatlin v. Commissioner, 754 F.2d 921, 923 (1985), aff'g T.C. Memo. 1982-489, for the proposition that "a taxpayer should not bear the burden of proving a negative (no unreported income) if the Commissioner can present no substantive evidence to support his deficiency claim." However, Gatlin is a deficiency case and does not address the requirements for properly raising an issue before the Appeals Office. See Gatlin v. Commissioner, 754 F.2d at 923.

On remand the Appeals Office provided petitioner with documentary evidence of petitioner's employees, including copies of checks, documents showing employment tax payments to the State of New Mexico, and bills and renewal notifications from the workers' compensation insurance policy, but petitioner still did not produce his own evidence tending to refute the Appeals Office's determination. Petitioner contends that the documentary evidence was insufficient because it includes references to taxable periods when petitioner ran his business through LG Kendrick. Although the record contains references to taxable periods other than the ones at issue here, it also contains documentary evidence related to the periods at issue.

**[\*17]** Petitioner also invokes the <u>Chenery</u> doctrine, although not by name, to discount respondent's evidence by contending that the determination cannot be upheld on grounds other than those upon which the Appeals Office actually relied. See <u>SEC v. Chenery Corp.</u>, 332 U.S. 194 (1947); <u>SEC v. Chenery Corp.</u> (<u>Chenery I</u>), 318 U.S. 80 (1943); <u>Antioco v. Commissioner</u>, T.C. Memo. 2013-35, at \*24-\*25. Petitioner interprets this doctrine to mean that respondent may not consider documentary evidence during a remand section 6320/6330 hearing that was unavailable at the original hearing.

Petitioner is correct in stating that we uphold the Appeals Office's determination only on grounds upon which the Appeals Office actually relied in the notice of determination. See <u>Chenery I</u>, 318 U.S. at 93-95; <u>Antioco v. Commissioner</u>, at \*24-\*25; <u>Jones v. Commissioner</u>, T.C. Memo. 2012-274, at \*22-\*23. However, sections 6320(b)(2) and 6330(b)(2) provide that a taxpayer is entitled to only one hearing with respect to either an NFTL or a proposed levy, respectively, for the year related to the unpaid liability.[13] <u>Freije v. Commissioner</u>, 131 T.C. 1, 5 (2008), <u>aff'd</u>, 325 Fed. Appx. 448 (7th Cir. 2009); <u>Kelby v. Commissioner</u>, 130 T.C. 79, 86 (2008). A hearing on remand is a supplement to

_____

[13]To the extent it is practicable, a sec. 6330 hearing will be held in conjunction with a sec. 6320 hearing. Sec. 301.6330-1(d)(2), Q&A-D3, Proced. & Admin. Regs.

**[\*18]** the taxpayer's original section 6320/6330 hearing and provides the parties with the opportunity to complete the initial section 6320/6330 hearing while preserving the taxpayer's right to receive judicial review of the ultimate administrative determination. Wadleigh v. Commissioner, 134 T.C. at 299; Kelby v. Commissioner, 130 T.C. at 86. The Appeals Office on remand is not constrained by the original administrative record, as often the purpose of remand is to augment a deficient record. See Hoyle v. Commissioner, 136 T.C. 463, 468-469 (2011), supplementing 131 T.C. 197 (2008); see also Meyer v. Commissioner, T.C. Memo. 2013-268, at \*27-\*30 (remanding a case to the Appeals Office to supplement the administrative record to show that a notice of deficiency was properly mailed). The Appeals Office makes a single determination with respect to an NFTL or a proposed levy for a taxable period. Kelby v. Commissioner, 130 T.C. at 86. When this Court remands a case and the Appeals Office issues a supplemental notice of determination, we review the determination as supplemented. Id.

On remand Settlement Officer Mares had access to and relied upon documentation unavailable during the original hearing. Respondent provided these documents, subpoenaed in preparation for trial, to petitioner upon receipt and incorporated them into the administrative record on remand. We remanded

[*19] this case in part for the Appeals Office to clarify whether petitioner had a prior opportunity to challenge the underlying liabilities and to explain to petitioner the basis of the underlying assessments. Settlement Officer Mares appropriately relied on the additional documents to carry out the Court's remand order and did not violate the Chenery doctrine in doing so. Petitioner may not distort the law to justify his continued refusal to cooperate with respondent or his abdication of the fundamental responsibilities of maintaining records and filing tax returns. See Hoyle v. Commissioner, 136 T.C. at 468; Jordan v. Commissioner, T.C. Memo. 2011-243, slip op. at 8 ("When we remand a case to the Appeals Office to clarify the record * * *, the Appeals Office is not limited to what the Appeals Office considered during the first administrative hearing." (citing Hoyle v. Commissioner, 136 T.C. at 468)), supplementing 134 T.C. 1 (2010); see also sec. 6001; secs. 31.6011(a)-1(a)(1), 31.6011(a)-3, Employment Tax Regs. (requiring employers to file returns under FICA and FUTA). Petitioner therefore did not properly challenge the underlying liabilities during the section 6320/6330 hearing, and we do not address them here.[14] See Pough v. Commissioner, 135 T.C. at 349

---

[14]Moreover, petitioner did not allege any facts or produce any credible evidence regarding the underlying liabilities in the stipulation of facts or otherwise that would permit us to conclude that he properly raised the issue before the Court. See Rule 331(b)(5); Goza v. Commissioner, 114 T.C. 176, 183 (2000).

**[\*20]** (holding that the taxpayer did not properly challenge the underlying liabilities when he did not file amended income tax returns before the Appeals Office issued the notice of determination despite saying he would do so); Busche v. Commissioner, T.C. Memo. 2011-285, slip op. at 32-33 (discussing a taxpayer's and the Commissioner's burdens and responsibilities during a section 6320/6330 hearing); see also sec. 6020(b); Andary-Stern v. Commissioner, T.C. Memo. 2002-212, slip op. at 11 (explaining that, in the absence of a taxpayer-filed return, the Commissioner need only "do the best he can with the information available to him").

We also do not consider the validity of the section 6651(a)(3) additions to tax, which are part of the underlying liabilities. See Katz v. Commissioner, 115 T.C. 329, 338-339 (2000). Section 6651(a)(3) imposes an addition to tax in the case of a failure to pay a tax required to be shown on a return, which was not so shown, within 21 days after the date of the IRS' notice and demand letter. Because the IRS first proposed to assess these additions to tax in the levy notice, petitioner did not have a prior opportunity to dispute the additions to tax and was entitled to challenge them during the section 6320/6330 hearing. See Ramdas v. Commissioner, T.C. Memo. 2013-104, at \*39-\*41 (holding that the taxpayer was entitled to challenge a section 6651(a)(3) addition to tax during a section 6330

[*21] hearing because the addition to tax did not accrue until after the issuance of the notice of deficiency, assessment, and notice and demand).  However, petitioner did not seek administrative review of the additions to tax in his section 6320/6330 hearing request or during the hearing itself.  Neither the notice of determination nor the supplemental notice of determination addresses the additions to tax.

Pursuant to section 6330(c)(3) the Appeals Office's determination shall take into consideration issues "raised" by the taxpayer under paragraph (2).  "Thus, if an issue is never raised at the hearing, it cannot be a part of the Appeals [Office's] determination."  Giamelli v. Commissioner, 129 T.C. at 113.  We cannot review respondent's determination on the basis of an issue that petitioner did not raise and that the Appeals Office never considered, and we therefore do not disturb the determination on the basis of its nonruling on the section 6651(a)(3) additions to tax.  See Magana v. Commissioner, 118 T.C. 488, 493-494 (2002); Ramdas v. Commissioner, at *41; see also Rule 331(b)(4); Funk v. Commissioner, 123 T.C. 213, 218 (2004) (holding that, when a taxpayer fails to assign error in the petition with respect to an addition to tax, the taxpayer is deemed to have conceded that item and the Commissioner has no obligation to produce evidence to support the determination (citing Swain v. Commissioner, 118 T.C. 358 (2002))).

**[\*22]** III.     <u>Conclusion</u>

Because petitioner may not challenge the underlying liabilities, we review the Appeals Office's determination for abuse of discretion.  <u>Sego v. Commissioner</u>, 114 T.C. at 610; <u>Goza v. Commissioner</u>, 114 T.C. at 182.  The record supports a finding that the Appeals Office properly verified that the requirements of applicable law and administrative procedure had been met.  Sec. 6330(c)(3); <u>Wadleigh v. Commissioner</u>, 134 T.C. at 287-288.  Petitioner did not suggest a collection alternative or file the necessary financial information and past due returns that would have allowed the Appeals Office to consider accepting one.  <u>See</u> sec. 6330(c)(2)(A)(iii).  Although petitioner checked the box for "Lien Withdrawal" on his Form 12153, he did not present the Appeals Office with any evidence regarding his entitlement to a lien withdrawal and therefore did not properly raise the issue before the Appeals Office or this Court.  <u>See</u> <u>Giamelli v. Commissioner</u>, 129 T.C. at 115; <u>Magana v. Commissioner</u>, 118 T.C. at 493-949; sec. 301.6320-1(f)(2), Q&A-F3, Proced. & Admin. Regs.  The Appeals Office properly balanced the need for efficient collection of taxes with petitioner's concerns regarding the intrusiveness of the proposed collection actions.

**[\*23]** We have considered the parties' remaining arguments, and to the extent not discussed above, conclude those arguments are irrelevant, moot, or without merit.

To reflect the foregoing,

<u>Decision will be entered for</u>

<u>respondent</u>.